IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOM LEWIS, | : | 4:07-cv-2011 |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| JESSE SMITH, *et al.,* | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### August 6, 2010

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is the Joint Motion for Sanctions on behalf of Defendants Dan Flaherty and Frank Sterner (Doc. 33) filed on February 22, 2010. The Motion has been fully briefed by the parties and is therefore ripe for our review. The Motion shall be granted to the extent set forth hereinafter.

**I.    PROCEDURAL HISTORY**

A summary of the procedural history of this matter and a prior related matter is necessary to the disposition of this Motion. On March 19, 2007, Plaintiff Thom Lewis filed a Complaint in the United States District Court for the Middle District of Pennsylvania against numerous defendants ("hereinafter "Lewis I").[1] Plaintiff,

---

[1] This case, Docket Number 4:07-cv-512, was before the Honorable Malcolm Muir.

through counsel Don A. Bailey, Esq. ("Attorney Bailey"), alleged a violation of his civil rights related to his "kennel License," and sued for relief pursuant to 42 U.S.C. § 1983. In Lewis I, the Plaintiff accused the defendants of using his kennel license to traffic in illegal dogs and of being parties to an illegal dog-selling ring which allegedly included members of the Attorney General's office.

On March 26, 2007, Lewis filed an Amended Complaint in Lewis I. Thereafter, on July 27, 2007, Judge Muir granted the Commonwealth defendants' motion to dismiss for failure to state a claim with respect to all but one of the Commonwealth defendants.

On August 13, 2007, Dan Flaherty and Frank Sterner, defendants in Lewis I, filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Rather than oppose the motion, Lewis filed a Second Amended Complaint, without requesting leave of Court. Judge Muir *sua sponte* issued an Order striking the Second Amended Complaint, and, in an abundance of fairness to Lewis, provided him an opportunity to file an opposition brief to Flaherty and Sterner's motion to dismiss. Thereafter, on October 18, 2007, Judge Muir granted Flaherty and Sterner's motion to dismiss.

On July 28, 2009, Judge Muir granted the remaining Commonwealth defendant's motion for summary judgment, thereby closing the case in Lewis I.

Lewis did not file an appeal of the Orders of dismissal in Lewis I.

On November 2, 2007, Lewis filed a new action that was assigned to the undersigned ("Lewis II"). The new action asserted the same or substantially similar claims as Lewis I, and included some of the same defendants that were dismissed from Lewis I, including Flaherty and Sterner.

On February 5, 2008, Defendants Flaherty and Sterner filed a motion to dismiss in Lewis II, alleging, *inter alia*, that Lewis' claims were barred by the doctrines of *res judicata* and/or collateral estoppel based upon Judge Muir's previous ruling in Lewis I.

On February 14, 2008, counsel for Flaherty and Sterner sent a letter to Attorney Bailey, requesting that he withdraw the new action. Attorney Baily did not respond to the letter.

By Order dated August 7, 2008, this Court granted Flaherty and Sterner's motion to dismiss, finding that Lewis II was barred by the doctrine of *res judicata*. On September 17, 2008, Lewis filed an appeal to the Third Circuit Court of Appeals to contest this Court's dismissal of Lewis II. The Third Circuit affirmed our August 7, 2008 dismissal of Lewis' claims against Flaherty and Sterner. The Third Circuit specifically concluded that "[i]f Lewis disagreed with the Lewis I court's rulings, he should have moved for reconsideration or filed an appeal rather

than file a second action."  (Doc. 33, Ex. K., p. 6).[2]

Thereafter, Defendants Flaherty and Sterner filed the instant motion for attorneys fees.  Upon review of the Motion, we issued an Order requiring the Defendants to file a supplemental submission cataloging the fees billed in <u>Lewis II</u> only, inasmuch as we do not have jurisdiction to award fees incurred in <u>Lewis I</u>.  (Doc. 51).  On June 21, 2010, the Defendants filed a supplemental submission indicating that they seek $22,939.69 for fees and costs incurred in this matter.  (Doc. 52).[3]

## II. DISCUSSION

### A. 28 U.S.C. § 1927 Anaylsis

28 U.S.C. § 1927 authorizes a court to impose sanctions upon an attorney who "unreasonably and vexatiously" multiplies the proceedings in a case.  To

---

[2] Flaherty and Sterner sought an award of $39,565.84 for attorney's fees and costs in the Third Circuit pursuant to Fed. R. App. P. 38, 42 U.S.C. § 1988 and 28 U.S.C. § 1927 from Thom Lewis and his counsel, Don Bailey.  United States Magistrate Judge Timothy R. Rice was appointed as a special master to recommend resolution of the attorney's fees and costs motion.  On July 28, 2010, Magistrate Judge Rice issued a Report and Recommendation ("R&R") recommending that Flaherty and Sterner be awarded $28,041.71 in fees and costs to be paid by Attorney Bailey.  Within the R&R, Magistrate Judge Rice concluded that Attorney Bailey "unreasonably and vexatiously multiplied the appellate litigation by presenting claims which were not well grounded in existing law, "and that "improper legal tactics employed by the Appellant establishe[d] the bad faith that has characterized this appellate litigation."  *Report and Recommendation*, No. 08-3800, July 28, 2010, pp. 14 -15.  On August 5, 2010, the Third Circuit adopted Magistrate Judge Rice's R&R.  (Doc. 58).

[3] Plaintiff filed an opposition to the Defendants' revised statement of fees sought, to which Defendants filed a reply.  (Docs. 52, 56, and 57).  Thus, this issue is fully ripe before the Court.

4

make an award under this statute, a court must find that the attorney acted with bad faith. *See Baker Industries, Inc. v. Valley Fair*, 764 F.2d 204, 206 (3d Cir. 1985). Bad faith may be shown though the "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g. harassment or delay." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). "When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied." *Loftus v. Southeastern Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1991), *aff'd*, 187 F.3d 626 (3d Cir. 1999), *cert. denied*, 528 U.S. 1047 (1999). Bad faith is a factual determination. Evidence of bad faith includes: (1) the claims advanced were meritless; (2) counsel knew or should have known the claims were meritless; and (3) the motive for filing the suit was for an improper purpose, such as harassment." *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F. 3d 175, 188 (3d Cir. 2002). Moreover, this Court also possesses the inherent power to impose sanctions on litigants and attorneys to "deter abuse of judicial process." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991).

Flaherty and Sterner argue that Attorney Bailey acted in bad faith, thus satisfying the prerequisite to sanctions under 28 U.S.C. § 1927, by filing and persisting in litigating Lewis II, in the face of the motion to dismiss on *res judicata*

grounds and defense counsel's letter to Attorney Bailey requesting that he withdraw the action inasmuch as it was barred by the rulings made by Judge Muir in Lewis I. We concur with the Defendants' assessment and find that Attorney Bailey's filing of Lewis II, and persistence in the lawsuit, is sanctionable under section 1927. As noted by the Third Circuit, rather than filing an appropriate motion to reconsider or appeal in Lewis I, Attorney Bailey filed a subsequent, frivolous action before this Court that was barred by *res judicata* grounds.[4] The filing of Lewis II forced the Defendants to incur additional expenses, that, quite simply, they never should have been forced to incur in the first place. Thus, we find that sanctions under section 1927 are entirely appropriate in this circumstance because Attorney Bailey unreasonably and vextatiously multiplied this litigation by filing a second lawsuit that was clearly barred by *res judicata*.[5]

### B. Award of Attorneys Fees

Next we must determine whether the amount requested by Defendants is a reasonable attorney's fees award.[6]

---

[4] It is well to note that Attorney Bailey was sanctioned for similar conduct in *Beam v. Downey*, 151 Fed. Appx. 142 (3d Cir. 2005).

[5] Astonishingly, in the briefing on the instant motion, Attorney Bailey continues to argue that Lewis II was not barred by *res judicata*.

[6] The Defendants originally requested that we award them all attorneys fees and costs incurred in defending both Lewis I and Lewis II. However, as noted above, we do not find that sanctioning Attorney Bailey for the fees incurred by the Defendants in Lewis I is appropriate in

"In general, a reasonable fee is one which is adequate to attract competent counsel, but which does not produce windfalls to the attorneys." *Pub. Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (internal quotation omitted). A court typically calculates the appropriate award by determining a lodestar. The lodestar is calculated by determining the product of an appropriate hourly rate and a reasonable number of hours expended. The party seeking fees has the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered. . . ." *Knight v. Drye*, 2009 U.S. Dist. LEXIS 82369 (M.D. Pa. Sept. 10, 2009) (quoting *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 1990)). Once the prevailing party's burden has been met, the opposing party bears the burden of producing sufficient evidence to challenge that amount. *McCutcheon*, 560 F.3d at 150. If the opposing party does not challenge the amount, or does not provide sufficient evidence to challenge the amount, the district court need not make an independent lodestar determination, though the calculation of fees nonetheless is within the court's discretion. *Id.*

---

this case. While we recognize that reason for sanctioning Attorney Bailey in this case relates to the litigation of <u>Lewis I</u>, we find it is beyond this Court's reach to sanction him relative to that lawsuit. Additionally, although sought by Defendants on the instant motion, we shall decline to award attorney's fees relevant to the Plaintiff's attempts to appeal to the United States Supreme Court.

A reasonable hourly rate is typically based on the prevailing rates in the relevant community, and "[t]he court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services. . . ." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). "Thus determination of the market rate first requires determination of the relevant market." *Windall*, 51 F.3d at 1186. In determining the reasonable hourly rate, courts can start by considering "the attorney's usual billing rate, but this is not dispositive." *Maldonado*, 256 F.3d at 185 (quoting *Windall*, 51 F.3d at 1185). As previously mentioned, the prevailing party bears the burden of establishing "by way of satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates meet [the above-mentioned] standard." *Id.* (quoting *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)) (internal quotation omitted).

In addition to determining a reasonable hourly rate, a court is charged with calculating the hours that are reasonably expended by the prevailing party. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode v. Dellarciprete*, 802 F.2d 1177, 1183 (3d Cir. 1990). As such, a party should not be responsible for those hours that are not reasonable or are excessive under the circumstances.

The amount reached by employing this framework and calculating the lodestar is typically "presumptively reasonable." *Interfaith Cmty. Org. V. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). Nonetheless, after calculating the lodestar, a district court's discretion then comes into play and the court may then increase or decrease the total award based upon other factors such as the relative success of the prevailing party. *See In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).

### 1. Reasonableness of Hourly Rates

Counsels' hourly rates are reported as follows: Attorney Montgomery, $250 per hour; Attorney Coble, $130 to $180 per hour; Attorney Skojoldal, $160 per hour; Attorney Susan Longnaker, $120 per hour; Attorney Schertz, $150 to $180 per hour; and Attorney Hoffman, $405 per hour. (Doc. 52, Exhibit A). Defendants submitted the declaration of Attorney Montgomery that avers she charged the Defendants $250.00 per hour in this matter, which is a significant discount from her usual and customary rates that have ranged from $315.00 to $370.00 per hour from 2007 to the present. Attorney Montgomery's declaration also avers that her rate of $250.00 in this matter is less than the rate that is reasonable and appropriate for an attorney with her experience in the Harrisburg legal market. (Doc. 52, Exhibit C).

Consequently, we find that the hourly rates for Attorneys Montgomery, Coble, Skjoldal, Longnaker and Schertz reasonable as they fall well below the accepted hourly rates for practitioners in the Harrisburg legal community. The higher amount of Attorney Hoffman's rate, however, is not supported by the exhibits submitted with Defendant's Motion. Attorney Hoffman performed 5.3 hours of work in total in this matter, and his work pertained exclusively to the drafting the reply brief on this motion. There is no evidence that Attorney Hoffman's work on this Motion is specialized work or that the Motion presented complex legal issues warranting specialized services at a higher rate. *See Washington v. Phila. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996); *Institutionalized Juveniles v. Sec. of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 54 (3d Cir. 1978). Thus, because the basis for Attorney Hoffman's rate is unsupported by evidence, we shall reduce his rate to match Attorney Montgomery's rate of $250, which, as noted, we find to be reasonable

2. **Hours Reasonably Expended**

Defendants request compensation for 121.15 hours of work on this matter,

Lewis II, including the hours expended on the instant sanctions motion.[7] As required, the Defendants have submitted evidence supporting the hours worked in the form of detailed timesheets/invoices. Despite Attorney Bailey's baseless protestations to the contrary, we find that the Defendant's fee petition is accompanied by "fairly definite information as to hours devoted to various general activities . . . and the hours spent by various classes of attorneys." *United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007) (quoting *Evans v. Port Auth.,* 273 F. 3d 346, 361 (3d Cir. 2001)).

We have examined the Defendants' detailed fee invoices. (Doc. 52, Exhibit A) The March 31, 2009 invoice reflects work done from the inception of the case (the first billed entry is January 9, 2008) through the filing and briefing of the motion to dismiss (the final entry on this invoice is May 15, 2008), totaling 25.9 hours. Encompassed within these 25.9 hours was Attorney Montgomery's preparation for and participation in the Rule 16 conference of attorneys, research for and preparation of the Defendants' successful motion to dismiss, and the preparation of a motion to stay discovery, the latter two tasks performed by Attorneys Coble and Montgomery. We do not find that 25.9 hours of work,

---

[7] As previously noted, we shall not entertain the Defendants' request for fees generated in either Lewis I or the attempted writ of certiorari to the United States Supreme Court.

including motion practice, performed by two attorneys over the course of five months is unreasonable. Thus, we shall not make any reductions to the March 31, 2009 invoice and shall award the total amount of fees billed on this invoice of $5,011.00

The January 30, 2009 invoice reflects work performed from September 8, 2008 through November 26, 2008 and mainly involves the research and initial drafting of the instant Motion. The total time billed on this invoice by Attorneys Schertz, Skjoldal and Longnaker is 46.4 hours. Upon our review of this invoice, we find that a portion of the hours billed by Attorney Schertz are duplicative and excessive. Given the straightforward nature of the sanctions motion, we find in particular that Attorney Schertz's reported hours for research and drafting of the motion are greater than necessary to perform these tasks. Thus, we shall reduce Attorney Schertz's hours on the January 30, 2009 invoice from 34.4 hours to 24.4 hours. Accordingly, on this invoice, we shall correspondingly reduce the amount of attorneys' fees from $5,832.00 to $4,332.00.

The first March 31, 2010[8] invoice reflects work performed by Attorneys Montgomery and Schertz from February 2, 2010 to February 23, 2010. The total

---

[8] There are two invoices dated March 31, 2010. The first invoice is number 670308D. The second invoice is numbered 670364D. To avoid confusion, we shall refer to these invoices as the "first" and "second" March 31, 2010 invoices.

amount of hours billed on this invoice is 18.45 and the tasks performed involve the revisions to, and filing of, the instant Motion. Once again, we find the amount of hours reported by Attorney Schertz on this invoice to be excessive in light of their duplicative nature. Thus we shall reduce Attorney Schertz's hours on this invoice from 15.65 hours to 7.8. Accordingly, on this invoice, we shall reduce the amount of attorneys' fees from $3,517.00 to $2,104.00.

The second March 31, 2010 invoice reflects work performed by Attorneys Montgomery and Schertz from March 15, 2010 to March 17, 2010. The total number of hours billed on this invoice is 15.30 hours. On this invoice there appears to be duplicative billing for the same task (i.e. revisions to the brief in support of the instant motion) by Attorneys Montgomery and Schertz. Accordingly, we shall reduce Attorney Montgomery's hours on this invoice from 4.3 hours to 3 hours and Attorney Schertz's hours from 11 to 9. As a result, on the second March 31,2 010 invoice, we shall correspondingly reduce the amount of attorneys' fees from $3,055.00 to $2,370.00.

The first May 17, 2010 invoice[9] reflects work performed by Attorneys Montgomery and Schertz from April 1, 2010 to April 27, 2010 and encompasses

---

[9] There are also two May 17, 2010 invoices. The first is number 677825D and the second is number 677829D. They shall be referred to as the "first" and "second" May 17, 2010 invoices.

2.5 hours of work. The work performed on this invoice involves the review of Plaintiff's opposition brief and calculation of filing deadlines. We find the time billed for the tasks performed on this invoice to be reasonable and shall award the entire amount of the invoice of $520.00.

The second May 17, 2010 invoice reflects worked performed by Attorneys Montgomery and Schertz from May 5, 2010 to May 13, 2010 and totals 7.3 hours of work. In this time frame, Attorneys Montgomery and Schertz performed research for and drafted the reply brief on the instant Motion. We find that the time entries appear reasonable and are not excessive. Thus, we shall award the total amount of this invoice of $1,419.00.

The final invoice submitted is dated June 21, 2010 and reflects 5.3 hours of work performed by Attorney Hoffman from May 4, 2010 to May 7, 2010. Attorney Hoffman's work was limited to the preparation of the reply brief on the instant motion. We find the time entries on this invoice to be reasonable. However, as noted above, we have reduced Attorney Hoffman's rate from $405 per hour to $250 per hour. Thus, the amount of this invoice shall be reduced from $2,146.50 to $1,325.00.

To review, we shall award the following amount of fees:

March 31, 2009 Invoice:  $5,011.00

January 30, 2009 Invoice: $4,332.00

March 31, 2010 (1) Invoice: $2,104.00

March 31, 2010 (2) Invoice: $2,370.00

May 17, 2010 (1) Invoice: $520.00

May 17, 2010 (2) Invoice: $1,419.00

June 21, 2010 Invoice: $1,325.00

_____

**Fee Total:** **$17,801.00**

Defendants are seeking an additional award of costs, in the total amount of $1,439.19. A review of the invoices submitted by Defendants reveals that this amount is comprised of costs associated with computer assisted legal research (i.e. Westlaw and/or Lexis Nexis), document reproduction, PACER charges, and postage. We do not find that the types of costs billed nor the amount of the costs billed to be excessive. Accordingly, we shall award the Defendants the full amount of the costs they seek, $1,439.19.

Thus, the total amount of attorneys' fees and costs awarded to the Defendants against Attorney Bailey pursuant to 28 U.S.C. § 1927 is as follows:

```
Fee Total:        $17,801.00
Costs Total:  $ 1,439.19
```
_____
**TOTAL:           $19,240.19**

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Sanctions (Doc. 33) is **GRANTED** to the following extent:

    a. The Defendants are awarded $19,240.19 in attorneys' fees and costs to be paid by Attorney Donald A. Bailey.

s/ John E. Jones III  
John E. Jones III  
United States District Judge